THE STATE OF TEXAS V. JOHN F. RUBION, INDEPENDENT EXECUTOR AND TRUSTEE OF THE ESTATE OF NELLIE HANSLEY, DECEASED, ET AL

No. A-5998. Decided December 4, 1957.
Rehearing overruled January 15, 1958.
(308 S.W. 2d Series 4.)

*John Ben Shepperd,* former Attorney General, *W. E. Allen* and *Katherine W. Conti,* Assistants Attorney General, *Russel G. Poling* and *E. M. Scott,* for Board of Texas State Hospitals and Special School, *W. O. Smyth,* of Austin, and *A. R. Schwartz,* of Galveston, *Will Wilson* (present Attorney General), *John Minton,* Assistant Attorney General, for petitioner.

The Court of Civil Appeals erred in holding that the will

of Nellie Hansley was ambiguous, and was subject to the in-troduction of extrinsic evidence to discover its meaning. Also in its holding that Ella Hansley has no present enforcible interest in the trust assets and that the trustee has the right to refuse to provide for her present support. Heidenheimer v. Bauman, 84 Texas 174, 19 S.W. 382; Schelb v. Sparenburg, 133 Texas 17, 124 S.W. 2d 322; Anderson v. Menefee, 174 S.W. 904.

*Lawrence M. Coughlin,* of Galveston, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

This is a suit brought by the State of Texas, through the Board of Texas Hospitals and Special Schools, for reimbursement for expenditures in furnishing support, maintenance, and treatment of a patient, Ella Hansley, at Abilene State Hospital during the period from April 25, 1945 to June 30, 1953. The amount due for that period is alleged to be $3,068.40, of which it is alleged that $2,980.00 accrued after January 23, 1947, the date of the death of Nellie Hansley, grandmother and adoptive mother of the patient. Nellie Hansley devised all of her residuary estate remaining after payment of debts to John F. Rubion, in trust, for the support and maintenance of Ella Hansley. The State sought recovery against John F. Rubion, in his capacity as independent executor and trustee of the estate of Nellie Hansley, deceased, for $2,980.00 and against Ella Hansley for $88.40, the remainder of said unpaid balance accruing prior to the date of the testatrix's death. On the trial before the court without a jury, judgment was rendered against the state and in favor of both defendants. The State did not appeal from the judgment in favor of the patient. The Court of Civil Appeals affirmed the judgment of the trial court in favor of the trustee. 292 S.W. 2d 650.

Ella Hansley, thirty-one years of age, was adjudged to be an epileptic and ordered admitted to the Abilene State Hospital at Abilene, Texas. She was never married but was cared for by her grandmother and mother by adoption, Nellie Hansley, until the time of her admission to Abilene State Hospital on April 25, 1945. She has been a patient in that hospital since that time and presumably still so remains.

■ The State had no right at common law to reimbursement of money expended for the care and maintenance of public patients such as Ella Hansley. Wiseman v. State, Texas Civ. App., 94

S.W. 2d 265, writ refused. The right of reimbursement must, therefore, rest entirely upon statutory enactment.

■ By an Act passed in 1949 the 51st Legislature undertook to grant a right by reimbursement to the State for care and maintenance extended to epileptics. See Acts 1949, 51st Leg., p. 756, Ch. 406, now appearing in Vernon's Annotated Texas Statutes as Article 3232a. Particular provision for reimbursement and for a lien on the property of the patient to secure the same is made in section 11 of Art. 3232a. Respondent argues that Section 11 is unconstitutional and void because the caption of the Act did not give notice of its presence in the Act as required by Section 35, Article 3 of the Constitution of Texas.

The caption of the Act reads as follows:

"An Act to provide for the better and more efficient care of epileptic patients at the Abilene State Hospital; defining the duties of the Superintendent; prescribing the means for admission; authorizing the transfer of epileptic patients from the mental hospitals to the epileptic hospital; prescribing the duties of the County Judge regarding admissions; providing for a repealing clause; and declaring an emergency."

Section 3 of the Act provides for admission of patients to the Abilene State Hospital for epileptics, classifies patients as indigent public patients, non-indigent public patients and private patients, and defines indigent and non-indigent public patients. Non-indigent public patients are said to be "those who possess some property out of which the State may be reimbursed or who have someone legally liable for their support, maintenance and treatment." Section 3 then continues: "This class shall be kept and maintained at the expense of the State, as in the first instance, but in such cases the State shall have the right to be reimbursed for the support, maintenance and treatment of such patients." Section 11 repeats the quoted language, and continues: "* * * and the claim of the State for such support, maintenance and treatment shall constitute a valid lien against property of such patient, or in case he has a guardian, against the estate, or against the person or persons who may be legally liable for his support, maintenance and treatment and financially able to contribute thereto * * *." Section 11 also provides that all money received and collected under the Act shall be used for the maintenance and improvement of the hospital.

It was the opinion of the Court of Civil Appeals that the statements in the caption or title of the Act to the effect that it was one for "the better and more efficient care of epileptic patients at the Abilene State Hospital" and that it prescribed "the means for admission" thereto were sufficient to give notice of the provisions of Section 11 and to meet the requirement of Section 35, Article 3 of the Constitution. 292 S.W. 2d 655. We share that view, and accordingly hold that Section 11 of Article 3232a is not unconstitutional on the ground assigned. Central Education Agency v. Ind. School Dist. of City of El Paso, 152 Texas 56, 254 S.W. 2d 357, 361-363; Doeppenschmidt v. International & G. N. R. R. Co., 100 Texas 532, 101 S.W. 1080; Harris Co. Water Control & Imp. Dist. v. Albright, 153 Texas 94, 263 S.W. 2d 944, 948.

■ The principal controversy in the case involves the question of whether the State may subject to its claim property which was devised and bequeathed by the will of Nellie Hansley, deceased, in trust to John F. Rubion for the support of Ella Hansley. The will is dated July 7, 1945 and paragraph Third is controlling. It reads as follows:

"THIRD: After the payment of all debts, funeral expenses, expenses of last illness and administration, the rest and residue of my property, both real, personal and mixed of which I may die seized and possessed, I give, devise and bequeath to my nephew, John F. Roubion, in trust, nevertheless, for the following powers, purposes and uses:

"(a) From such estate, and from the proceeds of any insurance policy on my life, payable either to the said John F. Roubion, Trustee, or otherwise, or which may be payable to my estate, my said trustee shall, at his discretion, and by the exercise of his own judgment, provide a means for the support and maintenance of my grand-daughter and adopted daughter, Ella Hansley, who, at this time is unable to provide for herself.

"(b) My said trustee, shall have the power and authority and the same is hereby conferred upon him, to sell and dispose of any part of my estate either for cash or otherwise and to execute and deliver all necessary instruments and documents to evidence such sale or other disposition; and he is further authorized to receive endorse and negotiate all bills of exchange, notes and checks in connection with such sale or transfer or in any wise connected with the transaction of business having to do with such estate.

"(c)   My said trustee shall have the power and authority and the same is hereby conferred upon him to invest and reinvest all monies belonging to such estate, and to sell and convey any and all investments so made and to reinvest the proceeds at his discretion.

"(d)   It is the intention hereof to give and grant to my said trustee full and complete powers of ownership over said estate in order that he may, to the best of his ability, carry out the purposes of this trust, that is, to provide a means of support for my grand-daughter and adopted daughter, Ella Hansley, in so far as such estate will permit, and to provide for her both in sickness and health, using therefor either the income or corpus of such estate, or both as the exigencies of the situation may require.

"(e)   After the death of my grand-daughter and adopted daughter, Ella Hansley, all of the remaining property of whatsoever kind, then remaining in the hands of my trustee, shall vest in and become the property of my nephey, John F. Roubion."

The vital question to be determined is whether Ella Hansley has a present enforceable interest in the trust property. If she has, that interest may be subjected to the claim of the State as a support creditor. Restatement of Trusts, Sec. 157, Vol. 1, p. 389. In other words, the State stands in the shoes of Ella Hansley and can reach the trust res only if and to the extent that Ella Hansley herself can reach it. Griswold, Spendthrift Trusts, p. 516, sec. 434.2.

■ The trust created by the will is not a spendthrift trust; it contains no provision, either express or necessarily implied, which restrains alienation of the beneficiary's interest or makes such interest immune from claims of creditors compatible with the purposes of the trust. Griswold, Spendthrift Trusts, sec. 264, pp. 302-304; Nunn v. Tiche-Goettinger Co., Texas Com. App., 245 S.W. 421; Estes v. Estes, Texas Com. App., 267 S.W. 709; Restatement of Trusts, Vol. 1, p. 367, sec. 152. It has all the characteristics of and is a support trust. Griswold, Spendthrift Trusts, pp. 505, 516; Restatement of Trusts, Vol. 1, p. 379, sec. 154. Even so, whether Ella Hansley can enforce a demand for the delivery of all or a part of the trust property for her present support must depend upon the intention of the testatrix, for the testatrix had a legal right to devise her prop-

erty as she saw fit and to prescribe the terms upon which her bounty should be enjoyed. Adams v. Williams, 112 Texas 469, 248 S.W. 673; Lanius v. Fletcher, 100 Texas 550, 101 S.W. 1076; Patten v. Herring, Texas Civ. App., 29 S.W. 388, writ refused. We must therefore ascertain the intention of the testatrix in the creation of the trust. The question is: Did the testatrix intend that the trust res be used for the present support and maintenance of the cestui or did she intend that none of it should be so used until and unless the cestui should be discharged from the state hospital?

If the language of the will, when considered as a whole, is plain and unambiguous we may look to it alone to find the intention of the testatrix and cannot consider extrinsic evidence of intention. Martin v. Brosig, Texas Civ. App., 113 S.W. 2d 279, writ refused; Whaley v. Quillin, Texas Civ. App., 153 S.W. 2d 969, writ refused; Johnson v. Moore, Texas Civ. App., 223 S.W. 2d 325, writ refused.

The trial court admitted testimony of respondent Rubion that the testatrix told him "that she always wanted me to look out for whatever there would be left after her death. That if Ella Hansley was put out or returned to Galveston, then there would be something to take care of her with. * * * that if at any time Ella Hansley was permitted to leave the Abilene State Hospital there and come back to Galveston that I would see then that she was taken care of." The Court of Civil Appeals held the language of the will creating the trust to be ambiguous and accordingly gave controlling weight to the quoted testimony and concluded that respondent was vested with absolute discretion to refuse to make any payments for Ella Hansley's support as long as she was in the state hospital. 292 S.W. 2d 657. We do not agree.

■ It is undoubtedly true that the will gives the respondent broad powers of management of the trust estate to provide "a means for the support" of the beneficiary and invests him with wide discretion in the use of the income or corpus, or both, when "the exigencies of the situation" require. On the other hand, the central and controlling language of the will is that the trust property shall be used for the "support and maintenance" of the beneficiary "both in sickness and health." That language, it seems to us, expresses the true intention of the testatrix. If the will were construed to authorize respondent to withhold from the beneficiary and her support creditors all payments

until she is discharged from the hospital, then none of the property would be used for her support and maintenance during her present illness and, for that matter, it might never be so used. We conclude that the will is plain and unambiguous, that it was the intention of the testatrix that the trust property should be used for Ella Hansley's present and future support and maintenance "in so far as such estate will permit," and that the quoted testimony of respondent was inadmissible and cannot be used to establish a different intention.

■ The discretion with which a trustee of a support trust is clothed in determining how much of the trust property shall be made available for the support of the beneficiary and when it shall be used is not an unbridled discretion. First National Bank v. Howard, 149 Texas 130, 229 S.W. 2d 781, 785; Anderson v. Menefee, Texas Civ. App., 174 S.W. 904, writ refused; Scott on Trusts, Vol. 2, sec. 187, p. 986. He may not act arbitrarily in the matter, however pure may be his motives. In re Brown, 345 Pa. 373, 29 Atl. 2d 52; Restatement of Trusts, sec. 187, p. 487; 90 C.J.S. 310, Trusts, sec. 261. His discretion must be reasonably exercised to accomplish the purposes of the trust according to the settlor's intention and his exercise thereof is subject to judicial review and control. Scott on Trusts, secs. 187, 187.1, 187.2 and 187.3; Kelly v. Womack, 153 Texas 371, 268 S.W. 2d 903, 907; Powell v. Parks, 126 Texas 338, 86 S.W. 2d 725; Davis v. Davis, Texas Civ. App., 44 S.W. 2d 447, no writ history.

On the trial of the case respondent accounted for the whole of the trust property, both corpus and income. At the beginning of his trusteeship the trust res consisted of a house and lot valued at $4,000 and the sum of approximately $1,000 in cash. The dwelling was in a dilapidated condition and the rental from it was $40.00 per month. The payment of taxes and insurance premiums and the making of repairs necessary to keep the dwelling rentable required the use of most of the income during the period preceding the trial in 1953. Respondent has at all times refused to make any payments to the State and testified that in administering the trust he had only "one thing in mind, and that is, if Ella Hansley ever gets out, the $40.00 a month that I am getting for the house now and what she has in the bank now, will enable me to put her in some convalescent home and keeping [sic] her."

■ On the evidence detailed and considering the testimony we

have held to be incompetent the trial judge made the following finding of fact:

"That John F. Rubion exercised the discretionary power (as provided in the will of Nellie Hansley) to provide for Ella Hansley, the cestui que trust, by maintaining the income producing real estate in good condition, so that the income therefrom might provide a means of support for her if and when she might be discharged from the Abilene State Hospital."

It was on that finding of fact that the trial court rendered judgment against the State. In the light of what we have said it is obvious that the finding cannot sustain the judgment. We hold that the refusal of respondent to make any payments for the support and maintenance of the cestui while she is in the state hospital subverts the intention of the testatrix and is an abuse of discretion. If our holding in this respect is in conflict with City of Bridgeport v. Reilly, 133 Conn. 31, 47 Atl. 2d 865, then we do not choose to follow that case. The judgments of the Court of Civil Appeals and the trial court must therefore be reversed. However, for reasons now to be stated the State of Texas is not entitled to have judgment rendered in its favor for the sum sued for.

The charge for support made by the State, pursuant to statutory authority, is $60.00 per month. The reasonableness of the charge is not questioned. At the time of the trial the accumulated unpaid monthly charges aggregated $3,068.40. The assets of the trust at the time of trial consisted of the house and lot valued at $4,000 and the sum of $1,564.06 in cash. The indebtedness at the time of trial could not have been satisfied except through a sale of the house and lot, and after its satisfaction the fund in the hands of the trustee for the support and maintenance of the beneficiary would have totaled only $2,495.82. Fifty-four monthly support installments aggregating $3,240.00 have accumulated since the trial. Assuming that a rental from the house of $40.00 per month has been collected throughout the fifty-four months since trial, from which taxes, insurance premiums and charges for necessary repairs have been paid, it is obvious that to permit the State to enforce its claim in full would force a liquidation of the trust property, would appropriate all of the proceeds to the payment of the State's claim and would terminate the trust at an early date when the beneficiary may have many years yet to live, and would thus destroy the trust and thwart the intention of the testatrix.

■ Moreover, a creditor furnishing necessaries to a beneficiary of a support trust may not take the entire trust res in satisfaction of cumulated claims and thus destroy the trust on a simple showing that the charges are reasonable. The rule as stated in the Restatement of the Law of Trusts, sec. 157, Vol. 1, p. 389, is that one furnishing necessary services or necessary supplies to a beneficiary of a support trust can reach "the interest of the beneficiary" in satisfaction of his claim. The extent to which the trust res may be subjected to the satisfaction of claims for support is thus not measured by the amount of such claims, however reasonable, but by the *interest* of the beneficiary in the res. What is the *interest* of the beneficiary? It is only such part or portion of the trust res as the trustee, in the exercise of a reasonable discretion, should make available for the support of the beneficiary.

Section 128 of Scott on Trusts, Vol. 1, pp. 664-677, deals with the "extent of the beneficiary's interest" in a trust. In Section 128.4, dealing with trusts for support, it is said that the "extent of the interest of the beneficiary depends upon the manifestation of intention by the settlor." The writer then points out that the extent of the interest is measured by what the trustee, in a reasonable exercise of his discretion in carrying out the intention of the settlor, should make available for the support of the beneficiary, and that in determining the interest much depends "on the size of the trust estate, on the condition in life of the beneficiary, on the extent of the discretion conferred upon the trustee."

There are other cases which point up factors to be considered in a reasonable exercise of discretion in administering a support trust.

In re Gruber's Will, 122 N.Y.S. 2d 654, a testamentary trustee of a trust fund of $4,500, set up for the benefit of a 72-year old woman patient of a state hospital, was sued for monthly charges of $85.00 per month cumulated over a two-year period. The court did not hold that the trustee was required to pay the sum charged by the State. Instead, the court held "that under the circumstances the trustee has the duty to pay the State a reasonable amount for the daughter's care, taking into consideration her age and condition, the work which she performs for the State, the amount of the trust fund and other factors bearing upon the situation."

In Hanford v. Clancy, 87 N.H. 458, 183 Atl. 271, the trial court awarded the State of Massachusetts a judgment for support charges in excess of the trust fund for care of a mental patient. The Supreme Court of New Hampshire reversed the judgment and, in commenting upon the duty of the trustee to make payments in keeping with the exercise of a reasonable discretion, said: "In passing upon this issue consideration should be given to all the pertinent, surrounding circumstances. The trustee, and in the event of judicial review of his acts, the court, should consider the size of the fund, the present situation of the beneficiary, her present and future needs, what other resources she may have available for her support, and what future emergencies are likely to arise."

In Falsey's Estate, 56 N.Y.S. 2d 556, 563, the court listed as some of the things to be considered as "the present age of the cestui; the state of his physical and mental health; expert medical opinion as to the prospect of his recovering his sanity and being discharged from the hosiptal; his personal needs, habits and interests; whether he is eligible (as many patients are) to more or less extended periods of absence from the hospital 'on parole;' whether or not he has any property of his own or dependents; the amount of the trust corpus in relation to the probable life expectancy of the cestui, and, possibly many other circumstances * * *."

■ Having reached the conclusion that the judgments of the Court of Civil Appeals and the trial court must be reversed but that judgment may not be here rendered for the State, we must next decide what disposition is to be made of the case. There is authority for ordering a dismissal of the case to afford the trustee an opportunity to exercise a reasonable discretion in arriving at the amount of payments to be made in the light of our discussion of the problem and after a proper consideration of the many factors involved. Hanford v. Clancy, 87 N.H. 458, 183 Atl. 271; In re Gruber's Will, Sur., 122 N.Y.S. 2d 654; Manning v. Sheehan, 133 N.Y.S. 1006; In re Brown, 345 Pa. 373, 29 Atl. 2d 52, 55. On the other hand, there is authority for remanding the case to the trial court to hear evidence and in the exercise of its supervisory jurisdiction to fix the amount of such payments. Scott on Trusts, Vol. 2, sec. 187, pp. 986-997; Collister v. Fassitt, 163 N.Y. 281, 57 N.E. 490; Colton v. Colton, 127 U.S. 300, 8 Sup. Ct. 1164, 32 L. ed. 138. There is still other authority for remanding the case to the trial court to hear evidence and fix the boundaries of a reasonable discretion to be

exercised by the trustee within maximum and minimum limits. Eaton v. Eaton, 82 N.H. 216, 132 Atl. 10; In re Sullivan's Will, 144 Neb. 36, 12 N.W. 2d 148.

Considering that we have held that there has already been an abuse of discretion by the trustee and that the outright dismissal of the suit or the mere fixing of boundaries might well entail further litigation, we have concluded that a remand of the case to the trial court for the definite establishment of amounts to be paid will better promote a speedy administration of justice and a final termination of this litigation. Accordingly, the judgments of the Court of Civil Appeal and the trial court are reversed and the case is remanded to the trial court for retrial in keeping with this opinion.

The trial court will hear evidence on the condition of the health of Ella Hansley, the prospects of her parole or release from the Abilene State Hospital, her probable life expectancy, the normal cost to the trust of taxes, insurance and repairs of the real property if the same is not to be sold and any other matters which are important, and, considering such matters, together with the size of the trust estate, will render judgment for the State for such sum as represents an accumulation of monthly payments, from the beginning of the trusteeship to date of judgment, which the respondent in a reasonable exercise of his discretion should have paid. The court will also fix the amount of monthly installments to be paid to the State in the future, subject to further orders of the court upon a showing of changed conditions. If the sum or sums so arrived at requires the sale of the real property, the trial court should order the same sold, keeping in mind in this regard that the purpose of the trust is for the support and maintenance of the cestui and not for the benefit of the remainderman and that the reasonable charge made by the State should be paid as nearly in full as possible, but keeping in mind also in fixing the amount of future payments that the trustee's contributions toward the personal comfort and needs of the cestui in the past have been practically nil and that he may wish to make greater contributions therefor in the future.

Opinion delivered December 4, 1957.

Rehearing overruled January 15, 1958.

Associate Justice Greenhill not sitting.