ESTATE OF JAMES S. TODD, JR., DECEASED, JANE JARVIS TODD RITCHEY, FORMERLY JANE JARVIS TODD, AND JAMES S. TODD III, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3953–70. Filed November 29, 1971.

*Robert S. Newkirk* and *Michael M. Gibson,* for the petitioners.
*Harold L. Cook,* for the respondent.

DAWSON. *Judge:* Respondent determined a deficiency of $252,018.28 in the Federal estate tax of the Estate of James S. Todd, Jr. The primary question to be decided is whether the estate is entitled to a marital deduction (amounting to $513,309.64) under section 2056, I.R.C. of 1954.[1] A second question is whether the estate incurred an interest expense which is deductible under section 2053(a)(2). Other questions involving additional deductions for reasonable attorneys' fees and executors' commissions have been resolved by the parties and can be given effect in the Rule 50 computations.

### FINDINGS OF FACT

All of the facts relating to the primary issue and most of the facts relating to the second issue have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners are the executors of the Estate of James S. Todd, Jr. The decedent died on April 27, 1966. He was a resident and domiciliary of Paris, Tex. Petitioner Jane Jarvis Todd Ritchey, formerly Jane Jarvis Todd, widow of the decedent, resided in Fort Worth, Tex., at the time of filing the petition herein. Petitioner James S. Todd III, son of the decedent, resided in Talala, Okla., at the time the petition was filed herein.

The will of James S. Todd, Jr., was admitted to probate on May 16, 1966. The Federal estate tax return was filed with the district director of internal revenue at Dallas, Tex., on July 26, 1967.

The will in question provides in articles I through IV for the payment of decedent's debts, funeral expenses, expenses of administration, and taxes and for the disposition of certain specific bequests. In article V, after appointing the Fort Worth National Bank and James S. Todd III, as trustees, the will creates two trusts—a marital trust (also called the Jane Jarvis Todd Trust) and a residuary trust (also called the James S. Todd III Trust). The marital trust was designed to qualify under section 2056(b)(5) as an exception to the terminable interest limitation, section 2056(b). Article V contains the following pertinent provisions:

A. It is my intention hereby to create two separate and distinct trusts, one of which, the "marital trust," shall be known as the Jane Jarvis Todd Trust and the other of which shall be known as the James S. Todd, III Trust.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

B. If my wife, Jane Jarvis Todd, survives me, then I give to the trustees of said trust, to be held and administered as hereinafter specified and provided, an amount equal to 50% of the value of my adjusted gross estate as finally determined for Federal estate tax purposes, less the aggregate amount of marital deductions, if any, allowed for such tax purposes by reason of property or interests in property passing or which have passed to my wife otherwise than by the terms of this numbered paragraph of my will.

* * * No asset or proceeds of any asset shall be included in the trust as to which a marital deduction is not allowable if included. Said bequest shall abate to the extent that it cannot be satisfied in the manner hereinabove provided.

In order to assure my estate of the maximum marital deduction permitted under the Federal estate tax provisions of the Internal Revenue Code, if my wife, Jane Jarvis Todd, shall survive me, the trustees shall immediately set aside as a separate trust so much thereof as is equal in value to the amount by which the maximum marital deduction available to my estate exceeds the aggregate value of all interests in property which pass or have passed from me to my said wife, except under the trust created by this paragraph, and otherwise qualify for the marital deduction. * * *

The marital deduction referred to herein is the deduction allowed in determining the Federal estate tax for property passing to a surviving spouse under the Internal Revenue Code in effect at the time of my death (presently Sec. 2056). The trustees shall hold, manage, invest and distribute the income and principal of the trust upon the following terms and conditions:

(1) The trustees shall in convenient periodic installments not less frequently than annually pay so much of the net income of this trust to my wife, Jane Jarvis Todd, so long as she shall live, as in their conclusive discretion should be so expended to accomplish the purpose of this trust.

(2) If during the lifetime of my wife, Jane Jarvis Todd, the trustees, in their complete and absolute discretion, determine that the net income of this trust, together with such other property and income as my wife may possess is insufficient to provide for her adequately and generously at the standard of living to which she has been accustomed, then the trustees may, from time to time, disburse or pay to her, or pay out for her use and benefit, from the corpus of this trust such amounts as they deem necessary to provide for her; provided, however, that no such distributions out of corpus shall at any time be made for the purpose of any business venture.

(3) On the death of my wife, Jane Jarvis Todd, this trust shall terminate and the trust properties, together with any undistributed income, shall be distributed to or for the use and benefit of such person or persons, or the estate of my wife, in such amounts and proportions and upon such terms, trusts, conditions and limitations as my wife shall appoint by a will made after my death, which will specifically refers to the power herein given to my wife. If my wife does not exercise in the manner specified her right to appoint by such a will, or to the extent that she does not exercise such right, then the trust properties of the Jane Jarvis Todd Trust shall become a part of the James S. Todd, III Trust hereinafter established, and shall be held, paid out and distributed according to the terms and provisions thereof.

(4) With respect to all items included in my gross estate for Federal estate tax purposes which pass to my wife, Jane Jarvis Todd, either directly or in trust for her benefit under the provisions of this will, or otherwise, and which qualify for the estate tax marital deduction in the event my wife survives me, I hereby

declare that if the order of our deaths cannot be established by proof, my wife, Jane Jarvis Todd, shall be deemed to have survived me.

C. The James S. Todd, III Trust shall consist of all the rest, residue and remainder of my estate of whatever kind or character, including the balance of my separate property and the balance of the entire community estate of myself and my wife, Jane Jarvis Todd, not heretofore disposed of.

The James S. Todd, III Trust shall be held by the trustees for the following uses and purposes:

(1) Unless my wife, Jane Jarvis Todd, should make an election not to take under my will, then during her lifetime The Fort Worth National Bank acting alone for this purpose as if it were the sole trustee hereof, shall pay over to her or pay out for her use and benefit from time to time, so much of the annual net income of this trust as said Bank, in its complete and absolute discretion, determines is reasonable and necessary to provide for her at the standard of living to which she has been accustomed, after taking into consideration the income she has available to her from other sources, including the income distributable to her or for her use and benefit under this will from the Jane Jarvis Todd Trust.

(2) So much of the balance of the annual net income of this trust remaining after the distribution to or for the use and benefit of Jane Jarvis Todd, as above provided, as The Fort Worth National Bank as trustee shall in its conclusive discretion deem proper to accomplish the purpose of this trust, shall be paid over to or paid out for the use and benefit of my son, James S. Todd, III, in convenient periodic instalments for and during the balance of his lifetime, not to exceed $1000.00 monthly.

(3) Upon the death of both my son, James S. Todd, III, and my wife, Jane Jarvis Todd, this trust shall terminate and all the trust properties, including any undistributed income, shall be paid over and distributed to the then surviving lawful bodily issue of James S. Todd, III, if any, per stirpes * * *.

(4) If at any time during the continuation of the James S. Todd, III Trust, The Fort Worth National Bank acting alone for this purpose as if it were the sole trustee, in its complete and absolute discretion, should determine that the net income of the trust is insufficient to provide for the care, maintenance, education and support of either Jane Jarvis Todd or James S. Todd, III at the standard of living to which they have been accustomed, after taking into consideration the income available to each of them, respectively, from other sources, said Bank shall be authorized to disburse or pay to either of them, or to pay out for their respective use and benefit from the corpus of this trust such amounts as it deems necessary to provide for either or both of such beneficiaries at the standard above set forth.

D. The trustees named herein shall have, possess and may exercise all the rights, powers and privileges conferred upon or exercisable by a trustee under the Texas Trust Act of 1943, as amended, or by virtue of any act hereinafter enacted amendatory thereof or supplementary thereto * * * to construe this will as often as occasion or need therefor arises, their interpretations and constructions made in good faith to be binding and conclusive upon all persons then or thereafter interested. * * *

The First National Bank of Fort Worth and James S. Todd III, the trustees of both trusts, have, in good faith, construed and interpreted the income distribution provision of the marital trust (see article V, part B, subpart (1), quoted above) as requiring them as trustees to pay

annually, or at more frequent intervals, all the income from said trust to Jane Jarvis Todd Ritchey, during her lifetime.

On July 21, 1967, the estate borrowed $300,000 from Todd Cattle Co. and executed a promissory note for that amount. The $300,000 was to be repaid on or before April 15, 1968, and was to bear interest at 6¼ percent per annum. The estate used this money to pay Federal estate and State inheritance taxes. The executors believed that it was necessary to borrow to meet death taxes because the estate did not own any liquid assets and nonliquid assets would have had to have been sold at "forced sale" prices.

On March 31, 1969, the estate repaid the note. It transferred to Todd Cattle Co. an undivided one-half interest in various mineral interests owned by the estate in Crockett County, Tex., and valued, at the date of decedent's death, at $375,800.85. (This figure was arrived at by subtracting from the total value of the mineral interests, $765,507.64, the amount of depletion taken by the estate from the date of death through March 31, 1969, on 100 percent of the mineral interests, $13,905.95, and dividing the remainder by 2.) The difference between the amount of principal plus interest, $331,927, and the amount transferred in repayment, $375,800.85, was refunded in cash by Todd Cattle Co. to the estate.

The exact amount of interest which accrued on the promissory note was $31,927. Part of this amount ($8,913.20) was deducted by the estate on one of its fiduciary returns. The estate now seeks to deduct the balance ($23,013.80), which respondent has disallowed.

OPINION

1. *Marital deduction.*—We must first decide whether the estate is entitled to a marital deduction. Section 2055 of the Code provides that a marital deduction shall be allowed for estate tax purposes for the value of any interest in property which passes from the decedent to his surviving spouse to the extent that such interest is included in determining the value of the gross estate. Subsection (b) provides that no deduction shall be allowed for a life estate or other terminable interest that passes to the surviving spouse. Subsection (b) (5) provides that as an exception to the foregoing terminable-interest rule a deduction will be allowed for an interest in property passing to the surviving spouse if she is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, and if she is given the power to appoint the entire interest to either herself or her estate. The power must be exercisable by her alone and in any event without being subject to a power in any other person to appoint any part of

the interest to any other person. See also sec. 20.2056(b)–1 and sec. 20.2056(b)–5, Estate Tax Regs. Section 20.2056(b)–5(e), Estate Tax Regs., provides that, in determining whether or not the conditions set forth above pertaining to the exception from the terminable-interest rule are satisfied by the instrument of transfer, reference should be made to the applicable provisions of the law of the jurisdiction under which the interest passes and, if the transfer is in trust, to the applicable provisions of the law governing the administration of the trust.

Since the will of James S. Todd, Jr., provides his surviving spouse with the proper power to appoint, the issue narrows down to whether the will also gave her the absolute right for life to all the income from the marital trust.

Focusing on article V, part B, subpart (1),[2] respondent argues that the trustees conceivably could exercise their "conclusive discretion" by withholding payment of the trust income to the testator's surviving wife. Thus, he contends, she did not have an absolute right to the trust income for life as required by section 2056(b)(5) and section 20.2056 (b)–5, Estate Tax Regs.

Petitioners contend that the words "conclusive discretion" must be read in context; that the provision, in fact, requires the trustees to distribute all the trust income not less frequently than annually to the testator's widow during her life; and that, consequently, the trust qualifies as a marital trust. In addition, petitioners point out that the trustees have construed the will in conformance with the above-stated interpretation and contrary to respondent's interpretation; that under Texas law this construction is binding on all interested persons; and that, because of this construction, the decedent's widow does indeed have an unqualified right—and has had such an unqualified right since the date of decedent's death—to all of the income, payable at least annually.

Having read the will as a whole and noted the layout and wording of the income and principal provisions of both the marital trust and the residuary trust, we conclude that Jane Jarvis Todd possessed an absolute right to the income from the trust upon her husband's death. The trust qualifies as a marital trust.[3]

We construe the disputed provision for the distribution of income as commanding the trustees to pay to the testator's surviving wife, at least annually, so much of the income of the trust as they think should be so paid *to accomplish the purpose of the trust*. In other words, the "conclusive discretion" of the trustees extends only to the amount of the income payments and is cut off by the overriding necessity of ac-

---

[2] This provision of the will is quoted in context in our Findings of Fact.

[3] For a case which is analogous to the present case, see *Guiney* v. *United States,* 425 F 2d 145 (C.A. 4, 1970).

complishing the purpose of the trust. And what is that purpose? We think it is clear that the trust's only purpose was to secure the benefits of the marital deduction. Numerous references to the marital deduction are made in the part of the will establishing the marital trust. Section 2056 is actually cited in the paragraph immediately preceding the disputed provision. As a result, we do not think that the trustees could withhold income payments without abusing the discretion bestowed upon them.

Texas State law supports our construction. It is well established in Texas that even though a trustee is granted discretionary authority by a testator in a testamentary trust, such discretion is limited and must comply with the purpose of the testator as revealed in the trust instrument. *State* v. *Rubion*, 308 S.W. 2d 4 (Tex. 1957); *Kelly* v. *Womack*, 268 S.W. 2d 903 (Tex. 1954). For example, the Supreme Court of Texas said in the *Rubion* case:

> The discretion with which a trustee of a support trust is clothed in determining how much of the trust property shall be made available for the support of the beneficiary and when it shall be used is not an unbridled discretion. [Citations omitted.] He may not act arbitrarily in the matter, however pure may be his motives. [Citations omitted.] His discretion must be reasonably exercised to accomplish the purposes of the trust according to the settlor's intention and his exercise thereof is subject to judicial review and control. [Citations omitted. *State* v. *Rubion, supra* at 9].

Respondent further contends that the testator had a second purpose in establishing the trust, i.e., to maintain his widow in the standard of living to which she was accustomed. This fact would enable the trustees to withhold income if they thought the trust income was unnecessary to maintain Jane Jarvis Todd at the standard to which she was accustomed. We reject this contention. While there is standard-of-living language in the invasion-of-principal provision of the marital trust and both the distribution-of-income and invasion-of-principal provisions of the residuary trust, this language does not affect the distribution of income of the marital trust. No standard-of-living test is attached to the distribution-of-income provision of the marital trust. And no provision for the accumulation of income of the marital trust appears at this point or at any other point in the will.

Since we base our decision with regard to this first question on our own reading of the will, we need not consider the effect of the trustees' construction of the will.

2. *Interest deductible as administration expense.*—Secondly, we must decide whether the estate incurred an interest expense amounting to $31,927, less $8,913.20 previously deducted, upon borrowing $300,000 to pay Federal estate and State inheritance taxes and whether

such an expense, if paid, is deductible as an administration expense under section 2053(a)(2).

On the basis of the testimony and documentary evidence, we find that the interest in dispute ($23,013.80) was incurred, paid, and not previously deducted. We also hold that such an expense is deductible as an administration expense. Sec. 2053(a)(2); *Ballance* v. *United States*, 347 F.2d 419 (C.A. 7, 1965) (involving section 812, I.R.C. 1939, the predecessor of section 2053). See also *Maehling, et al.* v. *United States*, (S.D. Ind. 1967, 20 A.F.T.R. 2d 5997, 67–2 U.S.T.C. par. 12,486); *Estate of Henry E. Huntington*, 36 B.T.A. 698 (1937) (involving section 303, Revenue Act of 1926).

Section 2053(a) provides as follows:

(a) GENERAL RULE. For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    *        *        *        *        *        *        *

(2) for administration expenses,

    *        *        *        *        *        *        *

*as are allowable by the law of the jurisdiction * * * under which the estate is being administered.* [Emphasis added.]

In view of the emphasized portions of the statute, it is recognized that State law controls the scope of the term "administration expenses." *Union Commerce Bank* v. *Commissioner*, 339 F. 2d 163 (C.A. 6, 1964). See also *United States* v. *Stapf*, 375 U.S. 118 (1963).

The law in Texas with regard to the allowance of an interest expense appears in the form of several statutory provisions. Section 242 of the Texas Probate Code, specifically dealing with expenses of administration, reads as follows:

Personal representatives of estates shall also be entitled to all necessary and reasonable expenses incurred by them in the preservation, safe-keeping, and management of the estate, and in collecting or attempting to collect claims or debts, and in recovering or attempting to recover property to which the estate has a title or claim, and all reasonable attorney's fees, necessarily incurred in connection with the proceedings and management of such estate, on satisfactory proof to the court. [Tex. Prob. Code Ann., sec. 242 (1956).]

In addition, section 329 of the Texas Probate Code grants the representative the authority to borrow funds when necessary for the payment of Federal estate and State inheritance taxes. Tex. Prob. Code Ann., sec. 329 (1956).[4] From these provisions we conclude that an

---

[4] While ordinarily approval of the court is required for borrowing, such approval is not required if, as here, the representative is an independent executor. Tex. Prob. Code Ann., secs. 3(aa) and 145 (1956); *Rowland* v. *Moore*, 174 S.W.2d 248 (Tex. 1943).

We note also that the will of James S. Todd, Jr., provides his independent coexecutors with the power to borrow money with which to pay Federal estate and State inheritance taxes.

interest expense such as the present one is allowable under Texas law. See *King* v. *Battaglia*, 84 S.W. 839 (Tex. Civ. App. 1905), *writ of error denied*, where interest incurred during administration on a promissory note of decedent was treated as an allowable expense of administration.

The burden is on the petitioners to prove that the interest expense was "actually and necessarily incurred." Sec. 20.2053–3(a), Estate Tax Regs.; *Estate of Christine Swayne*, 43 T.C. 190 (1964), acq. 1965–2 C.B. 6. In our judgment the petitioners have met this burden by presenting convincing, uncontroverted testimony. See and compare *Estate of Christine Swayne*, *supra*. James S. Todd III, as independent coexecutor of the estate, testified that he believed it was necessary for the estate to borrow the $300,000 in order to pay Federal estate and State inheritance taxes; that the estate did not own any liquid assets at the time; and that if the estate liquidated some of its nonliquid assets, these would have had to have been sold at reduced prices.

To reflect the agreement of the parties with respect to various deductions and our conclusions on the disputed issues,

*Decision will be entered under Rule 50.*