[Civ. No. 36978. Second Dist., Div. Five. Apr. 27, 1971.]

Estate of RICHARD C. COLYEAR, Deceased.
MARGARET A. COLYEAR HALVORSON, Plaintiff and Appellant, v.
RICHARD CALHOUN COLYEAR, as Successor Trustee, etc., et al.,
Defendants and Respondents.

---

## COUNSEL

Belcher, Henzie & Biegenzahn and Henry O. Wackerbarth for Plaintiff and Appellant.

Byron O. Smith, in pro. per., Gibson, Dunn & Crutcher, Frank L. Mallory and Fred F. Gregory for Defendants and Respondents.

---

## OPINION

**STEPHENS, J.**—This is an appeal by Margaret A. Colyear Halvorson (widow of Richard C. Colyear) from an order of the probate court denying her petition for instructions, wherein she sought an order instructing Richard Calhoun Colyear as testamentary trustee to distribute to the life income beneficiaries a stock dividend received by said trustee, and which had been paid out of retained earnings. Appellant is a life income beneficiary under the Richard C. Colyear Testamentary Trust, being entitled to 50 percent of the net income, with the right to invade the corpus of the trust in the event the net income is less than $1,000 a month. The trial court held the stock dividend to be corpus of the trust, and this appeal followed.

The statement of facts contained in appellant's opening brief has been agreed to by the parties, and we set it forth here by way of footnote[1] since

---

[1]"Richard C. Colyear died January 6, 1961 leaving a will admitted to probate in this proceeding. Said will provided for a Trust.

"On November 7, 1962 an 'Order for Preliminary Distribution and Setting Up Trust' was entered in said probate proceeding, the material provisions of which are as follows:

'It is therefore Ordered, Adjudged and Decreed by the Court that Fourteen Hundred Seventy Two and 2/9ths (1472-2/9ths) shares of the capital stock of Colyear Motor Sales Company, a California corporation . . . be and the same are hereby distributed to FRED E. NOLEN, hereinafter called TRUSTEE, as Trustee, to have and to hold said property, and any other property that may come into his hands as such TRUSTEE, in trust, upon the following terms and conditions, viz.:

'FIRST:

'1. Said Trustee is hereby vested with the legal title to, and is entitled to and shall have the exclusive possession, control and management of all of said trust property and estate.

'2. Said trustee shall collect and receive all income, interest, dividends, rents,

there is one controlling issue presented: Should 13,231 shares of common stock of Genuine Parts Company, distributed to the trustee herein as a 50 percent stock dividend on 26,462 shares of common stock of that

issues and profits thereof, and shall pay therefrom all taxes, assessments, street improvement bonds, insurance premiums, costs of repairs and other necessary and proper expenses incurred in the management, care and preservation of said property and estate or in carrying out the terms of this trust, including a reasonable compensation for his services.'

'SECOND: Said Trustee shall deduct any and all sums of money authorized to be deducted under the provisions of Subdivision 2 of Section FIRST above from the income of said trust property and estate and shall, on the first day of each and every six months period during the continuance of this trust, subject to the provisions of Section FOURTH hereof, pay said net income to the following named persons, in the following proportions, viz.:

'(a) One-half (½) thereof to MARGARET ARMSTRONG COLYEAR, widow of Richard C. Colyear.

'(b) One-half (½) thereof to the following named children of Richard C. Colyear, in the following proportions, viz.:

'1. RICHARD CALHOUN COLYEAR, son of Richard C. Colyear, two-sixths (2/6ths) of said one-half (½) of the net income.

[Paragraphs 2, 3, 4 and 5 provide for distribution of 1/6th of the net income to each of four daughters of Richard C. Colyear.]

'(c) In the event that one-half (½) of the net income paid to said Margaret Armstrong Colyear should be less than the sum of $1,000 per month, then and in that event, said TRUSTEE shall pay, out of the corpus of said trust estate, such sum as may be necessary to increase said monthly allowance to $1,000 per month.' "

" 'THIRD: In the event of the illness of, accident to, or distress on the part of any of the beneficiaries named herein during the continuance of this trust, said Trustee may, in his discretion, pay over to said beneficiary such sum or sums of money out of the corpus of said trust property and estate as said Trustee may consider necessary in order to care for said beneficiary during said period of illness, accident, or distress.

'FOURTH: [This provides for a reserve fund.]"

" 'TENTH: The trust herein provided for shall terminate and be of no further force and effect upon the happening of either of the following contingencies:

'1. Upon the death of Margaret Armstrong Colyear, widow of Richard C. Colyear, provided the youngest child of Richard C. Colyear shall have reached the age of twenty-five years.

'2. The arrival of the youngest child of Richard C. Colyear at the age of twenty-five years, provided Margaret Armstrong Colyear, widow of Richard C. Colyear, shall have died prior to that time.

'ELEVENTH: Upon the termination of this trust as provided in Section TENTH hereof, then and in that event, all of said trust property and estate shall go and be transferred, distributed and conveyed, to all of the children of Richard C. Colyear, or their issue by right of representation, said Richard Calhoun Colyear or his issue (said issue taking the share of their father) to receive twice the amount distributed to each daughter.' "

"Richard Calhoun Colyear became Successor Trustee on June 15, 1964.

"The Stipulation as To Facts stipulated as follows:

'1. On October 24, 1965, Richard Calhoun Colyear, as Successor Trustee, owned 1,470-3/9th shares of said Colyear Motor Sales Company stock;

'2. As of July 1, 1965, Colyear Motor Sales Company was merged into

corporation and constituting an asset of the trust estate, be disbursed by the trustee to the income beneficiaries of the trust created by the will of Richard C. Colyear and carried forward into the order for preliminary distribution

Genuine Parts Company, a Georgia corporation, which said merger became effective on October 25, 1965;

'3. As a result of said merger, the shareholders of Colyear Motor Sales Company received stock of Genuine Parts Company for their shares of stock in Colyear Motor Sales Company and Richard Calhoun Colyear, as such Successor Trustee, received for 1,470-3/9th shares of Colyear Motor Sales Company the following:

'(a) 17,644 shares of the $4.50 preferred stock of Genuine Parts Company;

'(b) 51,462 shares of the common stock of Genuine Parts Company;

'On May 26, 1967, Richard Calhoun Colyear, as such successor Trustee, sold 25,000 shares of said Genuine Parts Company common stock, held in trust, thereby leaving 26,462 shares of common stock of Genuine Parts Company in the said Trust;

'4. On January 6, 1961, the net retained earnings of Colyear Motor Sales Company were $7,905,703.60;

'5. On July 1, 1965, the net retained earnings of Colyear Motor Sales Company were $11,980,850;

'6. As of June 30, 1965, Genuine Parts Company had retained earnings of $16,301,736;

'7. As of December 13, 1967, the retained earnings of Genuine Parts Company were $29,418,288;

'8. On November 20, 1967, by resolution of the Board of Directors, duly and regularly adopted on said date, the Board of Directors of Genuine Parts Company declared a 50% stock dividend payable December 14, 1967, to common stockholders of record on November 30, 1967; pursuant to said resolution, 1,379,531 shares of common stock of Genuine Parts Company were distributed to the shareholders of said Company and $6,904,892 was transferred from retained earnings to the capital account of said Company. Of said 1,379,531 shares so distributed, 13,231 shares were distributed to Richard Calhoun Colyear as Successor Trustee of the Testamentary Trust of Richard C. Colyear, deceased.'

"The pertinent portions of the resolution adopted by the Board of Directors of Genuine Parts Company are as follows:

'RESOLVED, that there be and there hereby is declared a 50% common stock dividend on the outstanding common stock of the Company payable December 14, 1967, to common stockholders of record on November 30, 1967, provided however, that no fractional shares shall be issued as a result hereof but in lieu thereof stockholders entitled to receive a fractional share shall be paid the cash equivalent thereof based on the fair market value as of the record date of November 30, 1967.

'RESOLVED FURTHER, that upon the payment of said common stock dividend there shall be transferred to the capital account of the corporation an amount equivalent to the aggregate of the total number of shares of common stock issued as a result thereof at a par value of $5.00 per share and the earned surplus account shall be charged with such amount, and any cash distributed in lieu of fractional shares shall likewise be charged to the surplus account. . . ."

"A schedule showing the net income of Colyear Motor Sales Company and dividends paid during 1961-2-3-4-5 was received in evidence. It is as follows:

and setting up trust, or should the stock dividend be retained as part of the corpus of the trust estate?[2]

■ Under California law, where a decedent directs the manner of allocation of income, dividends and profits between income and principal,

| | Net Income | Retained Earnings |
|---|---|---|
| 'December 31, 1961 | $ 883,762.41 | $ 9,157,864.74 |
| December 31, 1962 | 974,784.14 | 9,903,574.35 |
| December 31, 1963 | 1,029,023.54 | 10,726,132.03 |
| December 31, 1964 | 1,192,595.00 | 11,700,274.00 |
| June 25, 1965 | 591,872.00 | 12,285,350.00 |

Dividends paid by Colyear Motor Sales in 1961, 1962, 1963 and 1964 were $200,000.00. In October of 1965 Colyear's paid $134,288.00.'

"The foregoing shows Colyear Motor Sales Company paid dividends equalling 19.99% of its earnings.

"A schedule showing the net income of Genuine Parts Company and dividends paid during 1965-6-7 was received in evidence. It is as follows:

| | Net Income | Dividends Paid |
|---|---|---|
| 'December 31, 1965 | $6,372,510.00 | |
| December 31, 1966 | 6,379,363.00 | |
| December 31, 1967 | 7,491,411.00 | |

DIVIDENDS PAID:
1965

| Genuine Parts: | | |
|---|---|---|
| Preferred Stock at $.82½ a share | $ 74,002.00 | |
| Common Stock at $.80 a share | $2,118,695.00 | |
| | $2,192,697.00 | |
| Colyear Motor Sales— | | |
| Before Merger | 134,288.00 | $2,326,985.00 |

1966

| Preferred Stock—$4.50 a share | $ 403,650.00 | |
|---|---|---|
| Common Stock at $.90 a share | 2,549,839.00 | $2,953,489.00 |

1967

| Genuine Parts: | | |
|---|---|---|
| Preferred—$100 Par at $4.50 a share | 403,650.00 | |
| Preferred—$35 Par | | |
| 4½% $.39 a share | 39,375.00 | |
| Common—$.69 a sh. in | | |
| 1967; $.60 in 1966 | $2,845,454.00 | |
| | $3,288,479.00 | |
| Richmond Warehouse before Merger | 91,703.00 | $3,380,182.00' |

"(NOTE: The foregoing shows Genuine Parts Company paid dividends based upon 41.1% of its earnings.)

"The stock received on the stock dividend (common stock) was the same kind and rank as the shares on which said dividend was paid."

[2]Appellant divides this question into four contentions and adds one other, with which we will deal *infra:* "The successor trustee is disqualified from objecting to the allocation of the stock dividend to " 'corpus.' " (Appellant's brief substitutes the word "corpus" for "income.") ·

such direction is controlling. "The Principal and Income Law[3] governs the ascertainment of income and principal then, unless the trust instrument contains a provision differing from a matter covered by this chapter, or the trustor directs the 'manner of ascertainment of income and principal' or grants 'discretion' to the trustee to do so." (*Estate of Bixby,* 55 Cal.2d 819, 823 [13 Cal.Rptr. 411, 362 P.2d 43].)

■ There is no question that the intent of the testator must be ascertained from the will, and his "intent" is to be determined as of the time of the making of the will. (*Estate of Hotaling,* 74 Cal.App.2d 898, 903 [170 P.2d 111].) ■ In the instant case, the trust being worded in accordance with that will and there being no other evidence to guide in its interpretation, we are not bound by the trial court's interpretation. (*Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].) The first step in our determination of the controlling question posed in this case is to construe the trust in the light of the will to ascertain whether the testator directed the "manner of ascertainment of income and principal." ■ We note the similarity of the language used in the instant trust to that used in the trust in *Estate of Talbot,* 269 Cal.App.2d 526, 532 [74 Cal.Rptr. 920], where the court said: "[T]he testator's will merely directs the trustee to '. . . receive the dividends, rents, issues, income and profits . . .' of the trust property, and '. . . to pay over the net income . . . to [the life tenant] during her lifetime." The listing of those items to be received by the trustee in the instant case includes one additional item, interest, not mentioned in *Talbot.* Since there is really no difference in the itemization, so far as the determination of the issue before us is concerned, we discern no reason to vary from the conclusion reached in *Talbot* as to the testator's intent as expressed in his will. In *Talbot,* the court stated that the decedent there did not foresee the kind of distribution therein involved (an antitrust directive to du Pont to divest itself of stockholdings in General

---

[3]Civil Code section 730.04, as of the time of the death of decedent herein, read as follows: "This chapter shall govern the ascertainment of income and principal and the apportionment of receipts and expenses between tenants and remaindermen in all cases where a principal has been established with or, unless otherwise stated hereinafter, without the interposition of a trust; except that in the establishment of the principal provision may be made touching all matters covered by this chapter, and the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this chapter. The exercise by the trustee or other designated person, of such discretionary power if in good faith and according to his best judgment, shall be conclusive, irrespective of whether it may be in accordance with the determination which the court having jurisdiction would have made." Exactly the same provision was contained in the California Principal and Income Act adopted in 1941. (Stats. 1941, ch. 898, § 2, p. 2476.)

Motors, accomplished by distribution thereof to its own stockholders). Likewise, in the instant case there is no suggestion that decedent envisaged the merger of the Colyear Motor Sales Company with the Genuine Parts Company some four and one-half years after his death. We adopt the conclusion reached in *Talbot* (p. 532): "It is clear that the testator did not foresee the kind of distribution made here and therefore gave no direction to his trustee as to how a distribution of this nature should be treated." ■ The argument of appellant relative to the gleaning of the intent of the testator goes beyond the intent to "direct the manner of ascertainment of income and principal," and urges that the manner of such apportionment is included within the will because the effect of the law at the moment of the execution thereof would have apportioned income and principal in a specified manner. The opening brief argues: "It is the law in effect at the date of the will (January 30, 1953) that is written into the will and which becomes a part of the Trust which derives its existence from the will." Appellant relies upon *Estate of Hotaling, supra,* to the effect that the law in effect at the time of execution of the will must be read into the will. Appellant reads too much into *Hotaling,* for it was not the existent law (as of the time of the execution of the will) which was read into the will in the absence of some clear expression of intent, but rather that decedent had in fact made an expression of intent when he stated ". . . so that said bequests, devises, and benefits under trusts shall be paid and delivered in full and without deduction," thus declaring in effect that there should be no proration of the federal estate tax.[4] While the result of *Hotaling* was to deny proration (and incidentally bring about the same result as would have been the case in the absence of the change in the tax law calling for proration in the absence of direction otherwise), it was the *direction* given in the quoted portion of the will which was determined to "otherwise direct(s)."

■■ Once having reached the conclusion that there was no direction given to the trustee, the allocation must be made under the provisions of the Principal and Income Law, and its provisions as they read at the time of distribution of stock on November 20, 1967 govern. The parties agree that if it is determined that there was no directive given by the trustor, then former Civil Code section 730.07 applies. (Civil Code section 730.07 was amended effective July 1, 1968, and the subject of former section 730.07 has been moved to section 730.06 without significant change as it relates to this appeal.)[5]

---

[4]Proration of the tax would follow in the absence of the testator's direction otherwise in his will.

[5]The law in existence as of the date of the execution of the will, the 1941 Principal and Income Act, provided that the testator *could* "direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant

There is no contention that the stock distributed was not of the same kind and rank as the shares on which such dividend was declared; this being the case, Civil Code section 730.07 is the applicable section of the act in determining the question before us. This section, as it existed on November 20, 1967, provided in applicable part as follows:

"(1) All dividends on shares of a corporation forming a part of the principal which are payable

"(a) In shares of the declaring corporation of the same kind and rank as the shares on which such dividend is paid; and,

"(b) In shares of the declaring corporation of a different kind and rank to the extent that they represent a capitalization of surplus not derived from earnings, shall be deemed principal.

"Subject to the provisions of this section, all dividends, other than those awarded to principal under (a) and (b) above, including ordinary and extraordinary dividends and dividends payable in shares or other securities or obligations of corporations other than the declaring corporation, shall be deemed income." As to the appropriate reading of this section as quoted, appellant seeks to have us read the words "to the extent that they represent a capitalization of surplus not derived from earnings" found in subsection (1)(b) as applying not only to the shares of "a different kind or rank," but also to "shares . . . of the same kind and rank," dealt with in subsection (1)(a). To follow the result which is urged by appellant would make meaningless subsection (1)(a), for then section (1)(b) could easily have been written by the Legislature to include all stock of whatever kind or rank and thus exclude (1)(a) in its entirety. ■ We determine that the general rule of construction is that a modifying phrase is ordinarily to be read as applying only to the last antecedent unless the context or natural construction of the language used requires otherwise. (*Anderson* v. *State Farm Mut. Auto Ins. Co.,* 270 Cal.App.2d 346, 349 [75 Cal.Rptr. 739]; *Grant* v. *Hipsher,* 257 Cal.App.2d 375, 383 [64 Cal.Rptr. 892].) The limiting clause "to the extent that they represent a capitalization of surplus not derived from earnings" is therefore a modification applying only to shares of "a different kind or rank"; a different reading would make meaningless the distinction between "shares of the same kind and rank" and those of "different kind or rank." ■ In other words, Civil Code section 730.07 specifies two situations in which dividends declared on shares of a

discretion to the trustee or other person¹ to do so, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this chapter." Certainly it is not a fair reading of the law to say that the recognition of the testator's right to "direct" writes the then existing law into the testamentary document.

corporation which are part of the principal of the trust estate shall be deemed principal: (1) when the dividend is in shares of the declaring corporation and of the same kind and rank as the shares on which the dividend is paid; and (2) when the dividend is in shares of a different kind or rank, they shall be deemed principal to the extent that they represent a capitalization of surplus not derived from earnings. In other situations, dividends declared, whether ordinary or extraordinary, are deemed income. (31 Cal.Jur.2d, Life Estates, Etc., § 58, pp. 412-413.)

The final contention of appellant is that the successor trustee (having qualified, and acting, as the trustee prior to the distribution in question) is disqualified from objecting to the allocation of the stock dividend to "corpus" (income).[6] We see no merit in this contention. Though there is a greater sharing by the successor trustee in the remainder than in the income, this was clearly within the contemplation of the trustor, and any conflict was one contemplated by that trustor, and not one in disparagement of the integrity or powers of the trustee.

The order is affirmed.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied May 14, 1971, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1971.

---

[6]See footnote 2, *ante* (p. 179).