COMMERCIAL NATIONAL BANK IN NA-
COGDOCHES, as Trustee of the Estate of
Sam B. Hayter, Deceased, Appellant,

v.

Mrs. Penelope M. HAYTER et al.,
Appellees.

No. 558.

Court of Civil Appeals of Texas,
Tyler.

Oct. 28, 1971.

Rehearing Denied Dec. 9, 1971.

Richard W. Fairchild, F. I. Tucker, Tom Senff, Nacogdoches, for appellant.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, James R. Cornelius, Jr., Lufkin, for appellees; Walter L. Borgfeld, Jr., Lufkin, of counsel.

MOORE, Justice.

This is an appeal from a suit by appellees seeking a construction of a testamentary trust created by the will of Sam B. Hayter, deceased, and a declaratory judgment. On the 9th day of December, 1957, Sam B. Hayter executed a will. The Will bequeathed to Trustees, Mary Elizabeth Hayter Montgomery, Kelly Bell, and the appellant, Commercial National Bank in Nacogdoches, about 9,000 acres of land (called the Farm), and all his home property on North Street in the City of Nacogdoches, Texas (called the Home Place), in trust until 21 years after the death of his last surviving grandchild who should be living at the time of his death.

The Trustees were directed "to pay during the life of my beloved wife, Penelope M. Hayter, *out of the income from the trust estate* (emphasis ours) in reasonable installments any sums" which may be necessary within the discretion of the Trustees to add to his wife's other income and the life income thereinafter provided for her to maintain and keep her during her life in the manner to which she "has been accustomed during our married life together." Subject to this provision for his wife, the Trustees were directed to pay the *net income* (emphasis ours) annually from the trust estate equally to his four children, or if deceased, to their issue per stirpes. It was provided that if any of his children should die without issue, his or her interest in the trust estate should be terminated and any income not paid in hand prior to the child's death should revert and become part of the trust principal. And it was provided that at the termination of the trust, the trust principal and any undistributed income thereon should be divided equally among any of his children then living and the issue of the body of any deceased child, per stirpes.

The testator conferred upon the Trustees all the powers enumerated by the Texas Trust Act, but it was provided that they should not sell any part of the lands com-

prising the trust estate during the period of the trust, with the further proviso that "(t)he standing timber on the Farm shall not be considered land for the purpose of this limitation."

Directing his Executor to pay all inheritance and estate taxes out of his estate prior to any distribution thereof, and to charge such taxes to his residuary estate before resorting to the trust estate, he provided, however, that his Executor, if considered for the best interest of the whole estate, might "selectively cut timber from the Farm for the payment of inheritance, estate or income taxes."

In accordance with the provisions of Section 33 of the Texas Trust Act, Article 7425b, Vernon's Ann.Civ.St., it had been the practice of the Trustees since the inception of the trust to treat as principal and withhold for the benefit of the remaindermen 27½% of the proceeds of oil, gas and other minerals produced from the Trust property and 27½% of the proceeds of timber sold from the Trust property. Plaintiffs filed this suit to have the Court declare that *all* of such proceeds, including the 27½% should be distributed to the beneficiaries as income.

Trial was before a jury. In response to the special issues, numbers 1, 2 and 4, the jury made the following findings: (1) that by the use of the word "income" in his Will, Sam B. Hayter intended to refer to all money coming into the trust from the sale of timber from the farm, (2) all money coming into the trust from oil and gas royalties from the farm, and (3) that by growing and selling timber the Trustees are using the farm in the continuance of a business which Testator had been carrying on.

The trial court rendered judgment on the verdict decreeing that the Trustees were authorized to distribute all proceeds from the sale of oil and gas as well as from the sale of timber to the devisees, and that no portion of the income was to be withheld for the benefit of the remain-

dermen. Appellant filed a motion to disregard the jury's finding and also filed a motion for new trial. Prior to the hearing on the motion for new trial, the Trustees held a meeting at which two of the Trustees, Kelly Bell and Mary Elizabeth Hayter Montgomery, voted in favor of a resolution that the Trustees would not seek a new trial or appeal from the judgment. Commercial National Bank dissented and pursued the motion for new trial. After the motion was overruled the Bank perfected this appeal.

Appellant attacks the judgment by twelve points of error asserting that the trust provisions of the Will show, as a matter of law, that the Testator failed to direct or provide what proceeds from the Trust Estate were to be treated as income and what should be treated as principal. Therefore, appellant contends that 27½% of the proceeds must be retained by the Trustees for the benefit of the remaindermen in accordance with Section 33 of the Texas Trust Act, Article 7425b, Vernon's Ann.Civ.St. Appellant further urges that since the meaning of the word "income", as used by the Testator, is neither patently or latently ambiguous, the construction of the Will is a matter of law for the court. The Bank also argues that even though some ambiguity existed, the trial court erred in submitting Special Issues No. 1 and 2, and in rendering judgment thereon because there is no evidence to support the submission of such issues or the jury's finding thereon. We sustain all of appellant's points, and in so doing, reverse and render judgment in favor of appellant, Commercial National Bank.

Section 26 of the Texas Trust Act, supra, provides:

"This Act shall govern the ascertainment of income and principal, and the apportionment of receipts and expenses between tenants and remaindermen in all cases where an express trust has been created; *except that* in the establishment of the principal, provision may be made touching all matters covered by this Act,

and *the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so*, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this Act." (Emphasis supplied).

Section 33 of the Act provides:

"Where any part of the principal consists of any interest in lands, including royalties, overriding royalties, and working interest, from which may be taken *timber, minerals, oil, gas or other natural resources*, and the trustee or tenant is authorized by law or by the terms of the transaction by which the principal or trust was established to sell, lease, or otherwise develop such natural resources, and no provision is made for the disposition of the proceeds thereof, such proceeds, if received as delay rentals on a lease shall be deemed income, but if received as consideration, whether as bonus or consideration for the execution of the lease or as royalties, overriding or limited royalties, oil payments or other similar payments, received in connection with the physical severance of such natural resources, shall be apportioned to principal and income as follows: 27½% of the gross proceeds (but not to exceed 50% of the net, after deducting the expense and carrying charges on such property) shall be treated as principal and invested or held for the use and benefit of the remainderman, and the balance shall be treated as income subject to be disbursed to the tenant or person entitled thereto. *Such disposition of proceeds shall apply whether the property is producing or non-producing at the time the trust becomes effective.*" (Emphasis supplied).

Sections 26 and 33 of the Trust Act make it clear that where any part of the corpus of the trust estate consists of land from which timber or oil and gas may be taken, and the Testator fails or refuses to

direct how the income shall be apportioned between the life tenants and remaindermen, the Trustees shall have the duty of retaining 27½% of the income for the remaindermen.

In Levin v. Commissioner of Internal Revenue, 355 F.2d 987, 989 (5th Cir., 1966), the Court held:

"It is basic trust law that the trustee has a duty to preserve the principal of the trust if it is a wasting asset, unless provided otherwise in the trust instrument. This duty entails the setting aside as part of corpus so much of the trust income as is necessary to replace the depreciation and depletion of the property comprising the trust corpus. * * *"

While the trust provisions of the Will directs the Trustees to pay certain sums "out of *the income* from the Trust estate" to the widow during her lifetime and directs the payment of the *"net income"* annually to testator's children, we fail to find anything in the language of the testator whereby he undertakes to explain the meaning of the word "income." Nowhere in his Will did he attempt to direct the manner of ascertainment of principal and income or the apportionment thereof between tenant and remaindermen, nor did he grant discretion to the Trustees to do so. Section 26 of the Trust Act, of which the Testator presumably had knowledge, provides: "This act shall govern the ascertainment of income and principal, and the apportionment of receipts * * * between tenants and remaindermen * * * except" when the settlor directs the manner of apportionment.

Where the Testator makes no mention as to the apportionment of depletion between the trust and its beneficiaries, the provisions of the Texas Trust Act governs the ascertainment of what is principal and what is income and the apportionment thereof between the life tenants and remaindermen. St. Marks Episcopal Church v. Lowry, 271 S.W.2d 681, 684 (Tex.Civ.

App., Ft. Worth, 1954, err. ref., n. r. e.); Hay v. United States, 263 F.Supp. 813 (5th Cir., 1967). Since the Testator did not choose to direct the manner of apportionment, it would seem to follow that he intended the Texas Trust Act to govern.

Appellee contends that the Testator's use of the term "income" without any explanation of its meaning creates an ambiguity and that they were permitted to offer evidence showing that the Testator intended to use the word in an unrestricted sense and citing as authority the case of St. Marks Episcopal Church v. Lowry, supra. The facts in that case are clearly distinguishable from these in the case at bar. In *St. Marks* the Testator provided that "all rent, royalties, * * * *all* income of any nature" from oil and gas leases were to be collected by the Trustees and paid out to the beneficiaries. Thus, the Testator in *St. Marks* by the use of the term "all royalties", "all income of any nature" clearly chose to exercise the option granted by Section 26 of the Texas Trust Act, and directs the manner of ascertainment of income and principal so as to deprive the remaindermen of any interest in the income from the trust estate.

 Where the language of the Will, when considered as a whole, is plain and unambiguous, we are required to look to it alone to find the intention of the Testator and cannot consider extrinsic evidence of intention. State v. Rubion, 158 Tex. 43, 308 S.W.2d 4. The Testator's direction that the beneficiaries were to receive "the income" or "net income" from the trust estate when construed in connection with Section 33 of the Act, does not in our opinion create an ambiguity. On the contrary, we think it shows that the Testator intended for the Trustees to follow the provisions of the trust act in determining what is income and what is principal. Section 33 provides that the Trustees shall retain 27½% for the remaindermen and that the "balance shall be treated as *income* subject to be disbursed to the tenant or person entitle thereto." (Emphasis sup-

plied). In other words, since he did not elect to direct how the receipts were to be apportioned and since he directed his Trustees to look to the Texas Trust Act in performing their duties, we must assume that he intended that the proceeds be apportioned in the manner provided by the statute. In the light of what we have said, no issue of fact was presented and therefore the jury's finding on Special Issues 1 and 2 cannot sustain the judgment. Even though it be assumed that some ambiguity as to whether Testator, by the use of the word "income", actually meant to give "all income" to the tenants and none to the remaindermen, we are, nevertheless, of the opinion that the evidence offered by appellees is not of sufficient probative force to show that Testator intended to give "all" income to the tenants. The only evidence offered by appellees was that the Testator himself used all of the income from the oil, gas and timber for general purposes in supporting his family and set up no fund for depletion. Also they proved that the Testator treated the timber as a crop, and cut and sold no more than the natural growth from year to year. The fact that the Testator followed this practice and used all of the income from the timber, as well as the oil and gas, would not, in our opinion, have any bearing upon how he intended to apportion the income among his devisees after his death.

While the Testator's use of the word "income" as it relates to the proceeds from the sale of timber presents a somewhat different situation, we are of the opinion that the apportionment of the receipts from the sale of timber is nevertheless controlled by the Texas Trust Act.

The Will does not undertake to provide that all of the revenue from the sale of timber from the trust property shall be treated as "income". The Testator simply did not undertake to exercise the option afforded by Section 26 of the Trust Act and direct the manner of ascertainment of income and principal, hence the provisions of Section 33 of the Trust Act must be ap-

plied to the proceeds of the sale of timber from the trust property.

Standing timber, unless and until severed, is a part of the realty. 37 Tex.Jur. 2d, Logs and Timber, section 1, p. 455. Recognizing this to be so, the Testator provided that "the standing timber on The Farm shall not be considered land *for the purpose of this limitation*" (referring to the limitation upon the Trustee with respect to the sale of any part of the lands comprising the Trust Estate). But this provision in no wise attempts to provide that all the proceeds of the sale of timber should be treated as "income"—it only serves to relieve the Trustee from the limitation that he may not sell any part of the lands comprising the Trust Estate so far as the standing timber on the farm is concerned. It makes no reference to the proceeds of the sale of the timber whatsoever. It is completely silent as to how such proceeds are to be apportioned between trust and its beneficiaries.

Nor does the provision in the Will that the Executor could "selectively cut timber from the farm for the payment of inheritance, estate or income taxes" undertake to provide in any way that *all* the proceeds of the sale of timber from the farm should be treated as "income." While the Trustees were no doubt authorized to cut and sell the timber, the fact remains that the timber constituted a part of the corpus of the trust estate. It follows that Section 33 of the Act applied to the timber as well as the oil and gas.

■ While Section 31 of the Trust Act, provides for the continuance by the Trustee, under certain circumstances, of a business which the Testator had been carrying on, and provides for the treating of the net profits of the business as income, we are of the opinion that this provision cannot be applied to the proceeds of the sale of timber for the reason that Section 31, being a general provision, must yield to the specific provisions of Section 33 imposing the duty upon the Trustees to preserve a trust,

the corpus of which contains wasting assets. There appears to be no basis for holding that Section 33 of the Texas Trust Act does not apply to the proceeds from the sale of timber cut and sold on a selective cutting basis even if carried on as a business. There is simply no language in Section 33, or elsewhere in the Texas Trust Act, which could reasonably be construed as reflecting such a legislative intent.

By way of a cross point, appellees assert that this court should dismiss the appeal because appellant, Commercial National Bank, had no authority to prosecute an appeal, inasmuch as a majority of the Trustees voted not to appeal or seek a motion for new trial. Appellees argue that appellant was in no way aggrieved by the judgment; that as one of the Trustees, appellant was no more than a stakeholder, and in view of the action of a majority of the Trustees, appellant is nothing more than a stranger to this appeal. In this connection, appellees rely upon Section 18 of Article 7425b, supra, which reads as follows:

"Unless it is otherwise provided by the trust instrument, or an amendment thereof, or by court order:

"A. Any power vested in three or more trustees may be exercised by a majority of such trustees; * * *"

■ We have concluded that appellees' contention is without merit. Section 24 of the Texas Trust Act allows actions to be maintained by or against "a trustee." It also provides that the statute and rules of court governing appeals shall govern actions and proceedings under the Act. Section 24 specifically authorizes an action to be prosecuted by "a trustee" and therefore would control over the general provisions of Section 18 allowing a majority of trustees to control the administration of the trust. Also, since the suit was brought under the provisions of Article 2524–1, V.A. T.S., allowing an action to be prosecuted by "any person" interested as a "trustee"

to determine any question arising in the administration of the estate or trust, including the construction of wills, and providing that such judgments under this statute may be reviewed as other judgments, it is apparent that a majority of the Trustees cannot deprive a dissenting trustee from prosecuting an appeal.

■ A co-trustee may alone appeal from a decree of distribution, if the other co-trustees refuses to join him, where the appeal is taken to protect the estate and the unascertained and unborn remaindermen. Re Luscombe, 109 Wis. 186, 85 N.W. 341 (1901), 6 A.L.R.2d 163.

For the reasons stated, the judgment is reversed and judgment hereby rendered directing the Trustees to retain as principal 27½% of all proceeds received from the oil, gas and timber sold from the trust property in accordance with the provisions of Section 33 of the Texas Trust Act.

Reversed and rendered.