**INTERFIRST BANK OF FORT WORTH, N.A., Independent Executor of the Estate of R. King Burton, Deceased, Appellant,**

v.

**Earl KING, Jr., and Gere King O'Brien, Appellees.**

No. 12-85-00175-CV.

Court of Appeals of Texas, Tyler.

Oct. 27, 1986.

David C. Bakutis, Fort Worth, for appellant.

Robert A. Anderson, Longview, for appellees.

BILL BASS, Justice.

Earl King, Jr., and Gere King O'Brien, the surviving income beneficiaries of a testamentary trust created by the will of R.E. King, brought this suit alleging that the trustee was not required to allocate and set aside for the benefit of the remaindermen a "depletion reserve" of twenty-seven and one-half percent of the oil and gas royalties received by the trust. They asked that the trustee be ordered instead to distribute all royalty payments, less operating expenses, to them as the income beneficiaries. The appellant, InterFirst Bank of Fort Worth, is the executor of the estate of R. King Burton, deceased, which holds a one-third remainder interest in the trust. The case was submitted upon agreed facts, the sole question presented to the trial court being whether the Texas Trust Code required the trustee to maintain a "depletion reserve" by allocating part of the oil and gas revenues to principal rather than distributing them as income. The trial court concluded that the testator's language in the will creating the trust reflected his intent that all net production revenues go to the income beneficiaries and that this represented an allocation of principal and income by the trustor sufficient to avoid the application of the Texas Trust Code. Judgment was therefore rendered for the income beneficiaries and against the remaindermen. We reverse and render.

The portion of the will that gives rise to the dispute is as follows:

3.

I direct that my executors and trustees continue the operation as at present, of the Oil Wells in Gregg County Texas, as long as in their judgment it is advisable to do so, but in no event shall they sell, encumber or dispose of such property or any part thereof, including oil royalties, so long as they produce in the aggregate $500.00 per month net, *and divide the income equally* between my brother Dr. T. Benton King, Earl King, Sr., R. King Burton and Mrs. Miles Bradford of Birmingham Alabama. But that portion going to Dr. T. Benton King shall be collected by my Executors & Trustees and paid to him quarterly, semi-annually or annually as he wishes and directs. (Emphasis supplied.)

The Trust Code provides the following guidance in determining the duties of a trustee with respect to allocation of receipts and expenditures to income or principal:

§ 113.101. Duty of Trustee as to Receipts and Expenditures

(a) A trustee shall administer the trust with due regard for the interests of income beneficiaries and remaindermen with respect to the allocation of receipts and expenditures by crediting a receipt or charging an expenditure to income or principal or partly to each:

(1) in accordance with the terms of the trust instrument;

(2) in the absence of any contrary terms of the trust instrument, in accordance with this subtitle; or

(3) if neither of the preceding rules of administration is applicable, in accordance with what is reasonable and equitable in view of the interests of those entitled to income and to principal.

. . . .

Tex.Prop.Code Ann. § 113.101 (Vernon 1984). The Trust Code further provides a specific scheme of allocation that applies when part of the principal consists of an interest in minerals or certain other natural resources. *Id.* § 113.107. This section re-

quires in part that when proceeds are received as a royalty or from any other interest in minerals except lease rentals and production payments, twenty-seven and one-half percent of the gross proceeds, not to exceed fifty percent of the net, is to be allocated to principal, and the balance is income. *Id.* § 113.107(d). Under section 113.101, this plan applies "in the absence of any contrary terms of the trust instrument."

The sole issue here, as in the court below, is whether the will provides for the ascertainment of trust income in a manner contrary to that ordered by section 113.107 so as to supersede the statute's requirement that twenty-seven and one-half percent of oil and gas royalties be set aside as principal. If the will furnishes a method for the ascertainment of principal and income, its terms will prevail over the statutory apportionment. But if the trust provisions do not supply the means for making this determination, then an allocation in conformity with the statute is required and the trustee was correct in establishing the depletion reserve. Appellant brings four points of error, but because the points of error relate to the single issue, they will be considered together.

Appellant relies chiefly on the decision of this Court in *Commercial Nat'l Bank v. Hayter*, 473 S.W.2d 561 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). In *Hayter*, a will directed the trustees to pay an amount to one beneficiary "out of the income from the trust estate," and to pay to other beneficiaries the "net income" from the trust estate. The trustees had been withholding 27½% for the benefit of remaindermen in accordance with former Article 7425b, § 33, which is the predecessor to section 113.107. The plaintiffs in that action brought suit to compel distribution of all trust proceeds, including the 27½%. This Court held that since the testator did not undertake to explain the meaning of the word "income" and did not choose to direct the manner of apportionment between the life tenants and remaindermen, the testator apparently intended the apportionment scheme of the Texas Trust Act to govern.

*Hayter*, 473 S.W.2d at 564–65. Appellees, however, state that a settlor will have negated the application of the reserve requirement if his intent to make a different allocation can be derived from the words which he used, citing *Hay v. United States*, 263 F.Supp. 813, 825 (N.D.Tex.1967). We recognize that *Hay* states the appropriate test, but we cannot agree with appellees' argument that in the instant case the trust language directing the trustee to "divide the income equally," when considered in its complete context, indicates an intent to allocate in a manner different from that prescribed by statute. Section 113.101 does permit contrary terms in the trust instrument to prevail over the statutory allocation. However, the testator's use of the word "income" is what raises the question; it does not answer it. In construing the instrument, we have been unable to determine that the testator-trustor intended a definition of "income" contrary to section 113.101 so as to supplant the statutory provision. In our view, the uncertainty surrounding the intended meaning of "income" begs the application of the statute.

Appellees nevertheless would object to an interpretation of the Trust Code that would require the use of "magic words" in order to negate the application of the depletion reserve requirement. No such interpretation is necessary, however. As this Court stated in *Hayter*, "Where the Testator makes no mention as to the apportionment of depletion between the trust and its beneficiaries, the provisions of the Texas Trust Act [now the Texas Trust Code] governs the ascertainment of what is principal and what is income and the apportionment thereof between the life tenants and remaindermen." *Hayter*, 473 S.W.2d at 564. But the settlor must give at least minimal guidance to the trustee as to the meaning intended by the word "income." In *St. Marks Episcopal Church v. Lowry*, 271 S.W.2d 681 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.), the will stated as follows: "I direct my Trustee to ... collect and receive all rent, royalties, rentals, bonuses, payments, claims, settlements in

compromise, all income of any nature which may arise out of or due to the ownership of any interest in any of these oil or gas leases...." This was followed by language directing the distribution of "income," after payment of expenses. Because the testator classified all revenue under "all income of any nature," the court concluded this language was sufficient to define income to mean all the revenue from the trust property. Therefore the *Lowry* court held the trust instrument's determination of principal and income rendered the statutory apportionment inapplicable. The will in the instant case says only that the trustee shall "divide the income equally." It fails to furnish even so tenuous a basis as that found in *Lowry* for avoiding the application of the statute.

Appellees nevertheless insist that other provisions of the will illustrate the testator's intent that the trust beneficiaries receive all of the oil revenue. First, appellees point to the following:

> If my brother Earl King, Sr. shall die during the pendency of this trust his interest under this section shall go share & share alike to his son Earl King, Jr. and daughter Gere King, but not to be paid them until they reach the age of 27 years. *This refers not to income but corpus of the estate.* (Emphasis supplied.)

Appellees argue that this paragraph provides for a distribution of corpus, upon a contingency, to Earl King, Jr., and Gere King O'Brien, and that such a provision is "clearly inconsistent with the idea that the Testator wished a portion of that corpus to be reserved for the benefit of remaindermen." This interpretation, however, begs the question as to what funds the testator intended should constitute income and corpus respectively, which is the very issue in this case.

Second, appellees point to the following language disposing of municipal bonds:

> I direct that *the income* from these bonds be divided equally between Dr. T. Benton King, Earl King, Sr. and R. King Burton & in the event of the death of either of them during the pendency of this trust, I direct that his portion *whether of income or principal* shall go to those and *in the same way and manner as is provided in such contingency in paragraph 3 next above dealing with oil properties....* (Emphasis supplied.)

Appellees argue that this provision explains the meaning of "income," in that the testator states that he considers his "income" to consist of both income and principal. Even if this argument were not subject to the same fallacy as appellees' first argument, appellees have failed to convince this court that the meaning of "income" with respect to the bonds has any bearing on its meaning as it relates to the oil and gas properties.

Finally, appellees argue that appellant's reliance on the decision of this Court in *Hayter* is misplaced because the testator in *Hayter* specifically directed his trustees to look to the Texas Trust Act in performing their duties. *See Hayter*, 473 S.W.2d at 562, 565. However, the fact that the testator in *Hayter* so directed was not dispositive. The decision clearly rests on the fact that the testator in that case did not choose to direct the manner of apportionment of income and principal. In addition, section 113.101(a)(2) contains no language that would require of the trust instrument an express reference to the Trust Code in order that the provisions of the Code apply.

We note that the provisions of the Trust Code at issue are based on the Uniform Principal and Income Act, 7B U.L.A. 150 (1962). The decisions of jurisdictions which have adopted the uniform act support our conclusion. In *Kumberg v. Kumberg*, 5 Kan.App.2d 640, 623 P.2d 510 (1980), the testator directed a beneficiary "to divide the net profits" from the testator's share of certain oil and gas producing property. The court held that the uniform act governed the distribution of royalties from the property, because the will contained no instructions as to what should be included as "net profits" and whether royalties should be so included. *Kumberg*, 623 P.2d at 512. Further support is found in older decisions

which, like the decision of the Texas court in *Lowry,* construe the provisions of the former uniform act. In *Millikin Trust Co. v. Jarvis,* 34 Ill.App.2d 180, 180 N.E.2d 759 (1962), the will directed the trustee to pay "the entire net income" from the trust estate to the testator's wife. The Illinois court rejected the contention that the testator directed the ascertainment of principal and income, stating "Only by a most strained and devious construction could such a conclusion be reached." [1] *Jarvis,* 180 N.E.2d at 766.[2]

For the reasons stated, the judgment of the trial court is reversed and judgment rendered directing the First National Bank of Longview, as trustee under the will of R.E. King, to retain as principal 27½% of the gross proceeds received from the oil and gas properties the subject of the trust, not to exceed 50% of the net, after deducting the expenses and carrying charges on the property, in accordance with Tex.Prop. Code Ann. § 113.107 (Vernon 1984) (Texas Trust Code).

---

**1.** Although the court did not expressly so state, the quoted language above appears to be the key language that the court examined.

**2.** Decisions not involving mineral properties have similarly resolved the issue. *See In re Estate of Colyear,* 17 Cal.App.3d 173, 94 Cal. Rptr. 696 (1971) (language directing trustee to "collect and receive all income, interest, dividends, rents, issues and profits thereof" and to pay out "net income" after certain deductions held insufficient to control in lieu of the uniform act); *Estate of Reynolds,* 494 Pa. 616, 432 A.2d 158 (1981) (the language "Any and all dividends shall be considered as income" held not to display sufficient clarity to preclude application of the uniform act).